IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS DELGADO, | No. C 06-5436 WHA (PR) |
| Petitioner, | **DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| BOB HOREL, Warden, | |
| Respondent. | |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has answered and filed a brief in support, and has lodged the record. Petitioner has responded with a traverse. For the reasons set forth below the petition is **DENIED**.

**STATEMENT**

A jury convicted petitioner of lewd conduct with a child. He was sentenced to twelve years in prison. His conviction was affirmed on direct appeal by the California Court of Appeal, and the California Supreme Court denied review. The issue he raises here was raised on direct appeal and so is exhausted.

**DISCUSSION**

**A.    STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's

adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

///

1    Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination
2 will not be overturned on factual grounds unless objectively unreasonable in light of the
3 evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres*
4 *v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

5    When there is no reasoned opinion from the highest state court to consider the
6 petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501
7 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

8 **B.    ISSUES PRESENTED**

9    Petitioner lived in a garage at the victim's mother's house for nine or ten years, starting
10 when the victim was about one (Exh. 4 at 1). When she was about eight he began molesting
11 here (*id.* at 2-4). When she was ten she told family what was happening (*ibid.*). She told police
12 she had been molested at least thirty times, that it had happened nearly every day except the two
13 days a week when her mother did not go to work (*ibid.*). She also was able to provide details
14 and dates for three of the incidents (*id.* at 3).

15    As grounds for federal habeas relief, petitioner raises only one issue, that the trial court's
16 denial of his challenge for cause of a biased juror forced him to use a peremptory challenge to
17 remove her from the jury. He contends that this violated his due process, equal protection, and
18 jury trial rights.

19    The court of appeal set out the facts relevant to this issue:

20    Juror Jarvis was a mother of two children, ages one and three years old.
During voir dire by the court, she spontaneously expressed concern about her
21 ability to serve as a fair and impartial juror. After apologizing because "this is
really emotional for me," she stated: "[W]hen I initially walked into the
22 courtroom, I had some issues with the fact that I assumed that he was a public
defender and at this point I watched three different translators with him, um. I
23 have issues with the fact that when he turned to face the jury to see if any of us
knew him, he didn't make eye contact with anyone. He looked quickly at the
24 floor. I knew immediately before you even said what the charges were." After
the court explained jurors must not "let those kinds of responses or reactions
25 affect" their decision, and remarked that the nature of the charges and Delgado's
courtroom behavior were "not evidence," juror Jarvis responded, "No, I know,"
26 and said "I think-I would like to hope I can have an open mind. I'd like to hope I
could." The court went on to explain the duty of jurors to keep an open mind and
27 start the case with no preconceptions about the defendant. When the court
concluded by asking juror Jarvis if she could commit to returning a verdict of not
28 guilty if she heard no evidence to rebut the presumption of innocence, she responded, "I hope

3

1  so." The court noted it is not unusual for people to have strong emotional reactions, and the important question for Jarvis was whether she could put aside her emotional response. The
2  court indicated it would give her time to "think about it" before the attorneys questioned her.

3  > Before the court moved on to question other potential jurors, Jarvis volunteered information she had not included on her juror questionnaire. In response to a
4  > question about involvement in a previous criminal matter, she stated that in 1991 she was held hostage in Puerta Vallarta. The people responsible were not
5  > arrested and charged. Jarvis did not believe this experience would affect the way she viewed the evidence or made a decision in this case. Also, regarding a
6  > question asking whether the juror would have difficulty being fair and impartial if the alleged perpetrator owned sexually explicit materials (to which Jarvis had
7  > responded "no"), Jarvis stated, "If that question was not complete enough to include anything other than mainstream heterosexual adult behavior, I need to
8  > change my answer." The court noted that, as far as it was aware, the sexually explicit evidence would consist of videotape and print material displaying adult
9  > heterosexual behavior. Jarvis responded, "If it's adults, I have no problem. If it involved-I will tell you right out. If it involved anything other than two adults, a
10 > male and female, I cannot be objective at all." The court reassured her it was aware of no such material that would be presented to the jury.
11
   > In a hearing outside the presence of the jury, defense counsel complained he was
12 > "very, very troubled" by statements Jarvis made in open court, which counsel interpreted "as being classist, [ *sic* ] racist, homophobic, [and] judgmental" in
13 > that Jarvis apparently assumed Delgado was guilty. Later, Delgado challenged juror Jarvis for cause, and the court indicated it would be inclined to grant this
14 > challenge if she were called into the jury box, based on "[h]er very strong emotional reaction together with the equivocal response and concerns on the issues...."
15
   > When Jarvis was eventually seated in the jury box, the court announced it
16 > intended to excuse her from the case because it appeared "this might be a little too difficult for you." However, Jarvis said she had "done a lot of soul
17 > searching" and believed she would be "okay" if she stayed on the jury. The court then asked for an assurance that she could still be a fair and impartial juror,
18 > given the emotional difficulty the case posed for her. Jarvis responded that, although the issue was emotional for her, especially because she had two very
19 > young children, "I do believe that he deserves a fair trial. I think my mind is open enough to give him as an individual an open mind." Finally, Jarvis affirmed
20 > that if she were in Delgado's place and wanted people on the jury who would make a fair-minded, objective decision, she would indeed be comfortable having
21 > someone with her frame of mind sitting on the jury. Defense counsel did not renew its challenge for cause to Jarvis but exercised a peremptory challenge to
22 > excuse her. Before the jury was sworn, Delgado's counsel objected to the court's failure to excuse Jarvis, and other jurors, for cause and expressed dissatisfaction
23 > with the jury. Counsel requested an additional six peremptory challenges. The court denied this request, noting with respect to Jarvis it did not believe a
24 > dismissal for cause was appropriate because, after she thought over the matter, Jarvis unequivocally expressed her ability to be fair.
25
   (Exh. 4 at 5-7)
26
        A prospective juror must be removed for cause if the juror's views or beliefs would
27
   prevent or substantially impair the performance of his or her duties as a juror. *Wainwright v.*
28

4

*Witt*, 469 U.S. 412, 424 (1985). "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." *Tinsley v. Borg*, 895 F.2d 520, 523-34 (9th Cir. 1990) (internal quotations omitted).

In this case, however, the juror did not end up on the jury, because the defense used a peremptory strike to eject her. The issue here, then, is whether petitioner's rights were violated when the trial court denied a challenge for cause, thereby forcing the defense to use a peremptory, and preventing the defense from using that peremptory to remove a biased juror who ended up sitting on the jury. In such cases the outcome depends on whether petitioner can show that a biased juror was seated as a result of his having to waste a peremptory on a prospective juror who should have been stricken for cause. *See United States v. Martinez-Salazar*, 528 U.S. 304, 311 (9th Cir. 2000) ("peremptory challenges are not of federal constitutional dimension."); *Ross v. Oklahoma*, 487 U.S. 81, 88, 90-91 (1988).

Petitioner has failed to show that any of the jurors who sat were biased. He had challenged three of them for cause. Two had expressed some concern with the "beyond a reasonable doubt" standard, but then affirmed to the court that they could follow the court's instructions and would be fair and impartial (Exh. 2D at 184). Another juror was challenged for cause because she had worked with a child assault prevention group twenty years before the trial; she also affirmed that she could be fair and impartial (*id.* at 221). This is far from sufficient to show that the jurors were biased.

Petitioner argues that he does not have to show bias on the part of at least one juror, but rather that under California law he need only show that a challenge to a juror for cause was erroneously denied, forcing him to waste a peremptory, and that he was "dissatisfied" with the composition of the jury (Trav. at 8). He asserts that the deprivation of the full quota of peremptories California law allows him was a "violation of his Fifth and Fourteenth Amendment rights to due process." The California Court of Appeal rejected his contention that the denial for cause was erroneous, however, so one of the essential elements of his reasoning is conclusively negated. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (a state court's interpretation of state law, including one announced on direct appeal of the challenged

5

1  conviction, binds a federal court sitting in habeas corpus).  As a consequence, even assuming
2  the correctness of petitioner's contention that a simple violation of state law in this area is also a
3  violation of due process, no constitutional violation has been made out (Exh. 4 at 10).

4  Additionally, as the United States Supreme Court has recently reaffirmed, there is no
5  constitutional right to peremptories or any specific number of them.  *Rivera v. Illinois*, 2009
6  WL 815033 at *3 (Mar. 31, 2009).  Petitioner's attempt to bootstrap his claim by claiming a
7  violation of state law cannot be allowed to negate this fact, even leaving aside that, as noted
8  above, there was no state law violation..

9  The rejections of these claims by the state appellate courts were not contrary to, or
10  unreasonable applications of, clearly-established United States Supreme Court authority.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April  3  , 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.06\DELGADO436.RUL.wpd